Estate of Nina Huddleson, Deceased, Roberton F. Williams, Administrator v. Commissioner. E. E. Huddleson v. Commissioner.
Estate of Nina Huddleson v. Commissioner
Docket Nos. 13026, 13034.
United States Tax Court
1949 Tax Ct. Memo LEXIS 267; 8 T.C.M. (CCH) 159; T.C.M. (RIA) 49032; February 11, 1949
*267 Section 107 (a), I.R.C. - Held, to be applicable to compensation received in 1943 for services rendered to one corporation which were entirely separate and distinct from services rendered to another corporation over the same period of time. Wallace W. Knox, Esq., 1600 Financial Center Bldg., Oakland, Calif., for the petitioners. Leonard A. Marcussen, Esq., for the respondent. TYSON Memorandum Findings of Fact and Opinion TYSON, Judge: These consolidated proceedings involve deficiencies in income and victory tax for the calendar year 1943 determined by respondent in the amount of $1,376.09 against the estate of Nina Huddleson, deceased, and in the amount of $3,944.11 against E. E. Huddleson. The year 1942 *268 is also involved in each proceeding because of the forgiveness feature of section 6 of the Current Tax Payment Act of 1943. The only issue involved in each proceeding is whether respondent erred in denying the benefit of the provisions of section 107 (a), Internal Revenue Code, in computing income and victory tax on $19,574.21 community income received in 1943 as compensation for personal services rendered by E. E. Huddleson to a certain corporation over a period of more than thirty-six calendar months. The proceedings have been submitted upon the pleadings, testimony, and a stipulation of facts including exhibits attached thereto. The stipulation is included herein by reference as part of our findings. Findings of Fact Roberton F. Williams, whose residence is Piedmont, California, is the duly appointed and acting administrator of petitioner, the estate of Nina Huddleson, deceased, who died on January 26, 1946, a resident of the County of Alameda, California. Prior to her death and at all times material here, Nina Huddleson was the wife of the petitioner, E. E. Huddleson, whose residence is Oakland, California. They filed separate Federal income tax *269 returns for the years 1942 and 1943 with the collector of internal revenue for the first district of California. Prior to November 19, 1934, E. E. Huddleson was the sole stockholder and general manager of the Santa Cruz Fruit Packing Co., a California corporation organized in 1941 (hereinafter referred to as Santa Cruz), which was engaged in the business of purchasing California fruits and vegetables from the producers, of processing and packing same in its two canneries, one at Santa Cruz and the other at Oakland, and of selling the finished product to the trade through brokerage concerns. On November 19, 1934, E. E. Huddleson sold 50 per cent of his Santa Cruz shares of capital stock to Stokely Bros. & Co., and in December 1935 he sold the remainder of such stock to that company, which was a Delaware corporation organized in 1929 and which maintained its principal office in Indianapolis, Indiana, and operated several canneries in the middle west in connection with its business of purchasing, processing, packing, and selling fruits and vegetables. Thereafter, and at all times material here, Santa Cruz was a wholly-owned subsidiary of Stokely Bros. & Co. or its successor, Stokely *270 Brothers & Company, Inc., an Indiana corporation organized in 1936 pursuant to a plan of reorganization, (both of which corporations are hereinafter referred to as Stokely). Prior to November 19, 1934, the broad of directors of Santa Cruz consisted of five persons including E. E. Huddleson and R. F. Williams, one of his associates. After Stokely had acquired 50 per cent of Santa Cruz's capital stock and, on July 30, 1935, the number of directors of Santa Cruz was reduced from five to four and, thereafter, until May 31, 1934, when Santa Cruz ceased business, the directors were Huddleson and Williams and two nominees of Stokely. From November 19, 1934 to May 31, 1943 E. E. Huddleson was the president and general manager of Santa Cruz. After Stokely acquired 50 per cent of Santa Cruz's stock and, on November 29, 1934, the board of directors of Santa Cruz adopted two resolutions relating to Huddleson's compensation for services as president and general manager of that company, namely, one resolution which fixed his compensation for 1934 at $750 a month plus a certain percentage of net profits, and a separate resolution which provided that his salary "on and after the first day of January, *271 1935, until rescinded by the board of directors, shall be $12,000.00 a year, payable $1,000.00 monthly." The latter resolution was never rescinded. After Stokely had acquired 100 per cent of Santa Cruz's stock and in February or March 1936 Huddleson and W. B. Stokely, Jr., president of Stokely, orally agreed that Huddleson would receive a minimum compensation from Santa Cruz of $18,000 a year, payable $1,000 monthly and the balance at the end of the year; and thereafter no other arrangement was made with respect to Huddleson's compensation for his services rendered as president and general manager of Santa Cruz. The total annual compensation, salary and bonus, received by Huddleson solely for services to Santa Cruz amounted to $12,000 for each of the years 1935 and 1936; $19,500 for 1937; and $18,000 for each of the years 1938 to 1943, inclusive. All this compensation was paid by check drawn by Santa Cruz and out of its bank account. As of June 1, 1943, Santa Cruz's assets and business were transferred to Stokely and thereafter Huddleson continued to render the same managerial services in respect to the Santa Cruz branch of the business. E. E. Huddleson was elected a vice president *272 of Stokely on March 6, 1939, but was never a director of Stokely. In the capacity of vice president he attended two or three meetings a year in Indianapolis to discuss and help decide matters of policy; but he never received any compensation from Stokely, and Santa Cruz paid his expenses in connection with those trips. Honor Brand Frosted Foods, a New York corporation organized on June 15, 1936, (hereinafter referred to as Honor Brand), was engaged in the business of purchasing all kinds of frozen foods from various processors located all over the United States, of assembling such products for labeling and distribution, and of merchandising such products under the Honor Brand label to the consuming public through nation-wide channels of distribution. In or about 1937 Stokely acquired 40 per cent of the capital stock of Honor Brand and, on February 1, 1939, Stokely acquired the remaining 60 per cent of such stock, and thereupon moved Honor Brand's executive offices from New York to Indianapolis in an effort to change a losing venture into a profitable one. However, Honor Brand continued to lose money and in or about June 1939 Stokely's officers asked Huddleson's advice as to the advisability *273 of continuing the operation of that business. Huddleson's advice was that the frozen food business was a comparatively new one which would probably become a competitor of the canning business and therefore the Honor Brand enterprise should be continued. Thereupon, W. B. Stokely, Jr., president of Stokely and a director of Honor Brand, asked Huddleson if he would assume the responsibility as general manager of Honor Brand with the latter's executive office being moved to Oakland, California, where Huddleson lived. Huddleson accepted the offer, pursuant to an oral agreement with W. B. Stokely, Jr. that he would have complete control over the business of Honor Brand in its entirety, including personnel, purchasing, sales, etc., without discussing policies with any other executives and, further, that he would be compensated for his services as general manager of Honor Brand on the basis of 15 per cent of that company's profits after it had earned $60,000 annually before income taxes. Such agreement was subsequently confirmed by a letter from Huddleson, dated January 25, 1940, and addressed to Stokely, which letter was approved by Stokely subject to its right to terminate the agreement *274 upon written notice. At the time E. E. Huddleson assumed the managership of Honor Brand its board of directors was composed of W. B. Stokely, Jr., and four others none of whom was E. E. Huddleson. On September 17, 1942, a new board of directors was elected consisting of W. B. Stokely, Jr., E. E. Huddleson, E. J. White, R. F. Williams, and C. A. Nugent. Huddleson actively managed the affairs of Honor Brand from about June 1939 to May 31, 1943 when it ceased doing business as a separate corporation and its assets and business were transferred to Stokely and thereafter Huddleson continued to render the same managerial services in respect to the frozen food branch of the business. The net profits resulting from the operations of Honor Brand during its four fiscal years material here were as follows: Year Ending
Amount
May 31, 1940
$157,020.88 (loss)
May 31, 1941
39,820.50 (loss)
May 31, 1942
342,523.37
May 31, 1943
224,812.73
Net profit for the four year
period
$370,494.72
Under Huddleson's agreement to manage Honor Brand, no compensation was due him for such services until May 31, 1943. On July 23, 1943, the board of directors of Honor Brand adopted a *275 resolution authorizing and directing the payment of $19,574.21 to Huddleson for his services in managing that company for the four years ending May 31, 1943, and such amount was determined pursuant to the agreement for his services and on the basis of 15 per cent of that company's net earnings over the four year period less $240,000 representing $60,000 to the company for each of those four years. This resolution was adopted following a statement by the chairman of the meeting that the agreement for Huddleson's services to Honor Brand was made by W. B. Stokely, Jr. acting on behalf of Honor Brand. On August 15, 1943, Honor Brand paid Huddleson the above-mentioned sum of $19,574.21 in full and final settlement for all services rendered by him to Honor Brand during the four year period ending May 31, 1943 and constituted the only compensation received by him for such services. Santa Cruz and Honor Brand ceased doing business as separate corporations on May 31, 1943, but they were not dissolved until later in 1943 upon cancellation of their capital stock owned by Stokely; and during all times material here Stokely, Santa Cruz, and Honor Brand each filed separate Federal income tax returns. *276 On the separate income tax returns of E. E. Huddleson and his wife Nina, respectively, one-half of the above-mentioned compensation of $19,574.21 received from Honor Brand was reported as community earnings and amounts thereof were allocated to other years for the purpose of computing the tax thereon under the provisions of section 107 (a), Internal Revenue Code. The respondent in asserting the deficiencies involved herein determined, inter alia, that the provisions of that section were not applicable. Opinion As presented by the parties herein, the question of the applicability of section 107 (a), Internal Revenue Code[1] (as amended by section 139 (a) of the Revenue Act of 1942), turns upon a question of fact. On brief respondent concedes that all of the statutory requirements are present if the facts herein satisfy the percentage requirement. However, respondent denies that the payment of $19,574.21 received by Huddleson in 1943 constitutes "at least 80 per centum of the [Huddleson's] total compensation for personal services covering a period of thirty-six calendar months or more," based on his contention that at all times material *277 here Huddleson was engaged in rendering single, integrated managerial services to Stokely and that the entire compensation received by him in 1943, in the amounts of $18,000 paid by Santa Cruz and $19,574.21 paid by Honr Brand, must of necessity be considered as undivided compensation for such services to Stokely. On the other hand, petitioners contend that the facts herein satisfy the percentage requirement. In our opinion, the facts herein clearly support the petitioner's *278 contention. The services rendered by Huddleson to Santa Cruz and Honor Brand, respectively, during the period involved were separate and distinct each from the other, were rendered to two separate corporations engaged in different lines of business, were performed under separate agreements entered into at widely separated times, and were compensated for by separate and distinct amounts received from each of those corporations, respectively. The amount of $19,574.21 received by Huddleson in 1943 from Honor Brand constituted 100 per cent of the total compensation for his personal services rendered to Honor Brand over a period of more than thirty-six calendar months, within the meaning of section 107 (a), supra. The instant case is distinguished, on its facts, from the cases of Harry Boverman, 10 T.C. 476; J. Mackay Spears, 7 T.C. 1271, affirmed 164 Fed. (2d) 486; Paul H. Smart, 4 T.C. 846, affirmed 152 Fed. (2d) 333, certiorari denied, 327 U.S. 804; Harry Civiletti, 3 T.C. 1274, affirmed 152 Fed. (2d) 332, certiorari denied, 327 U.S. 804; and Englar's Estate v. Commissioner, 166 Fed. (2d) 540, *279 affirming T.C. Memorandum Opinion entered June 27, 1947 [6 TCM 825,] employment for which inseparable compensation was received from one source and that the percentage requirement of the statute was not met. We hold that respondent erred in his determination. Decision will be entered under Rule 50. Footnotes
1. SEC. 107. COMPENSATION FOR SERVICES RENDERED FOR A PERIOD OF THIRTY-SIX MONTHS OR MORE AND BACK PAY. (a) Personal Services. - If at least 80 per centum of the total compensation for personal services covering a period of thirty-six calendar months or more (from the beginning to the completion of such services) is received or accrued in one taxable year by an individual or a partnership, the tax attributable to any part thereof which is included in the gross income of any individual shall not be greater than the aggregate of the taxes attributable to such part had it been included in the gross income of such individual ratably over that part of the period which precedes the date of such receipt or accrual.↩